IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

B.E. TECHNOLOGY, LLC,     )
                                 )
    Plaintiff,       )
                                 )
v.                        )    No.: 2:12-cv-02830-JPM-tmp
                               )
GOOGLE INC.,          )
                               )
    Defendant.      )

ORDER DENYING MOTION TO TRANSFER VENUE

Before the Court is Defendant Google Inc.'s ("Defendant" or "Google") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed December 18, 2012. (ECF No. 22.) For the reasons that follow, the Motion is DENIED.

I.  **BACKGROUND**

This case concerns Defendant Google's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent") and United States Patent No. 6,771,290 (the "'290 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E.") is the assignee of both the '314 and '290 patents (ECF No. 29 at 2), currently owning "all right, title, and interest throughout the period of the infringement" in the respective patents (ECF No. 1 ¶¶ 13, 16).

B.E. alleges that Google infringed the '314 patent "by using a method of providing demographically targeted advertising

that directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 14.)   Further, B.E. alleges that Google infringed the '290 patent "by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2 of the '290 patent either literally or under the doctrine of equivalents." (Id. ¶ 17.)

B.E. filed a Complaint in this Court on September 21, 2012. (ECF No. 1.)  Google filed its Motion to Transfer Venue on December 18, 2012 (ECF No. 22.), and filed its Answer to the Complaint on December 31, 2012 (ECF No. 25).  B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on January 7, 2013.  (ECF No. 29.)  With leave of Court, Google filed a Reply Memorandum in Support of Its Motion to Transfer on January 29, 2013.  (ECF No. 37.)  On February 7, 2013, Google filed a Motion to Stay pending resolution of its Motion to Transfer Venue.  (ECF No. 39.)  The Court granted Google's Motion to Stay on February 11, 2013.  (ECF No. 42.)

Google seeks to transfer this case to the Northern District of California, where its headquarters are located.  (ECF No. 22-1 at 1.)  To support its Motion, Google contends that all products and services of which it is alleged to have infringed were developed and have been operated from the Northern District of California, and, as such, "all witnesses, documents, and

2

other relevant evidence" regarding the accused products are
located in that district.  (Id. at 2.)  Further, Google asserts
that a majority of third-party witnesses on whom it intends to
rely are also located in or around the Northern District of
California.  (Id. at 1.)

B.E. opposes Google's Motion to Transfer.  B.E. is a
limited liability company incorporated in Delaware.  (ECF No. 1
¶ 2.)  B.E. was originally registered in Michigan, but formally
registered to conduct business in Tennessee in September 2012.
(ECF No. 29 at 2.)  B.E. contends that Memphis, Tennessee, is
its principal place of business.  (ECF No. 1 ¶ 2.)  Martin David
Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor
of both the '314 and '290 patents.  (ECF No. 29 at 1.)  Hoyle
has been a resident of Tennessee since April, 2006.  (Id. at 2.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district.  B.E. argues that
Hoyle has been "present in this District since 2006, and B.E.
since at least 2008," and this district is B.E.'s principal
place of business.  (Id. at 4-5.)  B.E. also argues that none of
its witnesses are located in the Northern District of
California.  (Id. at 7.)  Further, B.E. argues that its
corporate documents, including documents relating to the
"conception and reduction to practice" of the patents-in-suit,
are located in this District.  (Id. at 4, 5, 7.)

3

**II. STANDARD**

Google moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (ECF No. 22-1 at 1.)  The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate."  Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district.  28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought").  Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district.  Reese, 574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these statutory factors, the court may still consider the private- and

4

public-interest factors set forth in the pre-Section 1404(a)

case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but

courts are not burdened with "preconceived limitations derived

from the forum non conveniens doctrine." Norwood v.

Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight

v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal

quotation marks omitted); Esperson, 2010 WL 4362794, at *5.  The

United States Court of Appeals for the Sixth Circuit has stated

that when deciding "a motion to transfer under § 1404(a), a

district court should consider the private interests of the

parties, including their convenience and the convenience of

potential witnesses, as well as other public-interest concerns,

such as systemic integrity and fairness, which come under the

rubric of 'interests of justice.'" Moore v. Rohm & Haas Co.,

446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been

interpreted broadly by courts, influenced by the individualized

circumstances of each case.  The United States Court of Appeals

for the Federal Circuit has set forth a non-exhaustive list of

pertinent public-interest factors:

> The public interest factors include (1) the
> administrative difficulties flowing from court
> congestion; (2) the local interest in having localized
> interests decided at home; (3) the familiarity of the
> forum with the law that will govern the case; and (4)
> the avoidance of unnecessary problems of conflicts of
> laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see also In Re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local-interest factor weighed heavily in favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering additional factors such as the relative docket congestion of each district).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer.  (ECF No. 29 at 4-6.)  B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108 M1/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with  OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994).

Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference.  Discussing the difference between the common-law doctrine of forum non conveniens and the federal transfer-of-venue statute in Norwood, the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. . . . [W]e believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d 680, 685 (6th Cir. 1958) ("The choice of the forum by the petitioner is no longer as dominant a factor as it was prior to the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL 4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a change of venue to the transferee district is warranted.  See Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D. Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138 F.R.D. at 93.  "Merely shifting the inconvenience from one party

to another does not meet Defendant's burden." McFadgon v. Fresh
Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.
Oct. 21, 2005). "[T]he movant must show that the forum to which
he desires to transfer the litigation is the *more convenient one
vis a vis* the Plaintiff's initial choice." Roberts Metals,
Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt
Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal
quotation marks omitted). If the court determines that the
"balance between the plaintiff's choice of forum and defendant's
desired forum is even, the plaintiff's choice of [forum] should
prevail." Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494,
2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

Google asserts that B.E. could have brought this action in
the Northern District of California. (See ECF No. 22-1 at 7.)
B.E. does not dispute this assertion. (See ECF No. 29 at 4.)
The Court agrees with the parties that B.E. could have brought
suit in the Northern District of California as personal
jurisdiction over Google exists in that district. Therefore,
the only issue remaining is whether the balance of the statutory
factors — the convenience to the witnesses, the convenience to
the parties, and the interest of justice — favors transfer to
the Northern District of California. The Court will address
each statutory factor separately and balance these factors to

determine whether transfer to the Northern District of California is proper pursuant to § 1404(a).

### A.   Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence regarding the precise details of the inconvenience" of the forum chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93).  Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience."  Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *3 (W.D. Mich. May 18, 2011) (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted).  It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  Rinks, 2011 WL 691242, at *3.

Google contends that witness convenience favors transfer to the Northern District of California. (ECF No. 37 at 5.)  To support this contention, Defendant asserts that a majority of the witnesses on which it intends to rely are located in that district.  These witnesses include at least two material witnesses who are Google employees and at least ten non-party witnesses.

In response, B.E. argues that "transfer to the Northern District of California would be equally inconvenient to B.E.'s witnesses, none of whom is located in the Northern District of California." (See ECF No. 29 at 7.)  B.E. identifies Hoyle, the named-inventor of the patents-in-suit and founder and CEO of B.E., as its key witness who is located in the Western District of Tennessee. (ECF No. 29 at 5, 7-8.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

10

### 1. Party Witnesses

Google asserts that "Google employees most knowledgeable about the design, development and operation of its advertising and its tablet computer products . . . are located in the Northern District of California." (ECF No. 22-1 at 4.)  In its Reply, Google specifically lists two employees, Oren Zamir and Wei-Hsin Lee, as two individuals who are most knowledgeable about the design, development, and operation of the accused products and services.  (ECF No. 37 at 7; ECF No. 37-1 ¶ 3.)  Google further asserts that it "believes that additional material witnesses are also located in the Northern District of California but is unable to identify those witnesses because B.E.'s infringement contentions lack specificity as to the functionality of the accused products and services that allegedly infringe." (ECF No. 37 at 7.)

Google does not provide any evidence showing that any employees will be unwilling to testify in this district if asked to do so or how such employees will be "severely inconvenienced" if the case proceeds in this district.  See Esperson, 2010 WL 4362794, at *8.  Moreover, courts have noted that "normally a corporation is able to make its employees available to testify when needed." Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. V. Atlandia Imps., Inc., 478 F. Supp. 2d

11

983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience
of witnesses who are employees "will not ordinarily be
considered, or at least, that the convenience of such employees
will not generally be given the same consideration as is given
to other witnesses").  Accordingly, it appears that Google's
employees will be able to attend absent any evidence to the
contrary.

Therefore, regarding Google employees, Google cannot
satisfy its burden.  Google argues that due to the distance
between Memphis and the Northern District of California,
approximately 1800 miles, travel to Memphis "would impose a
significant inconvenience for Google's witnesses."  (ECF No. 22-
1 at 9-10.)  Yet, the same is true for B.E.'s witnesses, which
B.E. asserts do not reside in the Northern District of
California.  (ECF No. 29 at 7.)  Therefore, because § 1404(a)
provides for transfer "to a more convenient forum, not to a
forum likely to prove equally convenient or inconvenient,"
distance of travel for employee witnesses does not weigh in
favor of transfer.  Hunter Fan, 2006 WL 1627746, at *2 (citing
Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

Google further argues that because it intends to call "at
least a dozen witnesses, including material witnesses, located
in the Northern District of California," and because B.E. only
identified one witness, Hoyle, this factor weighs in favor of

12

transfer.  (ECF No. 37 at 5.)  With respect to the material
witnesses, Google does specifically list two employees who have
particular knowledge about the "design, development and
operation of the accused products and services."  (ECF No. 37 at
7; ECF No. 37-1 ¶ 3.)  Although this assertion is imprecise as
to the materiality of the testimony of the named individuals, it
is not asserted that their testimony will not be relevant and
material in this case.  Google's general statement, however,
that it believes other material witnesses are located in
California does not aid the court in assessing (1) what the
testimony of such additional material witnesses will be; (2)
whether such witnesses will be unable to attend; or (3) whether
and to what extent such witnesses will be inconvenienced by
testifying in this district.  Google cannot rely on such "bare
allegations" to satisfy its burden.  Esperson, 2010 WL 4362794,
at *8.  Google, therefore, has only identified two material
witnesses on whom it intends to rely for purposes of transfer
under § 1404(a).

    While B.E. did not specifically identify any witnesses
beyond Hoyle, B.E. does not have the burden to do so.  Despite
B.E. not identifying any individuals beyond Hoyle, Google's
identification of two material witnesses who are Google
employees does not satisfy its burden on this factor. A simple

numerical advantage is insufficient on the issues raised by a
motion to transfer.

Moreover, B.E. argues that "[i]t is likely that Google's
California-based employees will be deposed in California where
B.E.'s lead counsel is based." (ECF No. 29 at 10.) This
further indicates that the witness-convenience factor does not
weigh in favor of transfer. See Hunter Fan, 2006 WL 1627746, at
*2 (finding relevant that the plaintiff planned to take
depositions of the defendant's witnesses in California in
determining that the witness convenience factor did not favor
transfer).

### 2. Non-Party Witnesses

While convenience to party witnesses is an important
consideration, "it is the convenience of non-party witnesses,
rather than employee witnesses . . . that is the more important
factor and is accorded greater weight." Steelcase Inc. v. Smart
Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004)
(citation omitted) (internal quotation marks omitted). Google
asserts that it intends to rely on at least ten non-party
witnesses who have knowledge about prior art related to the
patents in suit. (ECF No. 22-1 at 5; ECF No. 37 at 5.) Google
states that it intends to subpoena "at least the inventors
and/or assignees of the patents for documents, and seek their
testimony, as part of its invalidity defense." (ECF No. 22-1 at

14

6.)  Google further contends that these witnesses "are all
located in the Northern District of California or on the West
Coast." (ECF No. 22-1 at 9-10.)  To support its contention,
Google listed the ten witnesses and their last-known addresses.
(ECF No.22-1 at 5-6.)  Google further claims that it has
confirmed that at least six of the witnesses reside in the
Northern District of California and "that all but one of the
prior art patents have either an inventor or assignee who
resides in the District." (ECF No. 37 at 8.)

Google argues that to satisfy its invalidity defense,
Google will need to subpoena these witnesses for documents and
depositions. (ECF No. 22-1 at 10.)  Additionally, Google argues
that some of the non-party witnesses "may become key witnesses
for Google's defense at trial." (Id.)  Google claims that it
will not be able to compel these witnesses to testify at trial
if the case remains in Tennessee, but will be able to compel the
witnesses to testify at trial in the Northern District of
California. (Id.)

B.E. argues that the convenience of third-party witnesses
is not entitled to great weight in the instant case because
Google has not established that the "third party testimony will
be material or important." (ECF No. 29 at 10.)  B.E. argues
that Google has not stated the "relevance, materiality, and
importance" of the non-party witnesses' testimony. (Id. at 11-

12.)  B.E. further argues that prior-art testimony is "almost
certain to be severely limited at the time of trial" and,
therefore, such testimony does not weigh in favor of transfer.
(Id. at 10-11.)

    The availability of compulsory process for unwilling
witnesses is a consideration closely related to the convenience-
of-witnesses factor and the costs of procuring the witness, and
therefore is an important consideration for the Court.  See,
e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at
*4.  Whether this factor should be given considerable weight
depends on the materiality of the testimony to the resolution of
the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the
Northern District of California would be able to compel the
prior-art witnesses to testify at trial.  See Fed. R. Civ. P.
45(b)(2).  In contrast, the prior-art witnesses would not be
subject to the subpoena power in this district, see Fed. R. Civ.
P 45(c)(3)(A)(ii), but would be available for deposition in the
Northern District of California if unwilling to testify in this
district.  Therefore, the testimony of such witnesses
potentially would "not be live and therefore could be less
persuasive."  Rinks, 2011 WL 691242, at *4.

    Google, however, has not disclosed the particulars of the
testimony of the potential non-party witnesses, nor why
depositions of non-party witnesses would be inadequate and live

16

testimony from non-party witnesses required.  To the extent the non-party witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue.  Google merely states that some of the prior art witnesses "may become key witnesses for Google's defense at trial."  (ECF No. 22-1 at 10.) This general statement is not sufficient to allow the Court to determine whether live testimony of Google's non-party witnesses is necessary.  Further, Google does not state whether it is aware that any of the non-party witnesses would be unwilling to testify in this district if asked to do so.  As a result, this factor does not weigh in favor of transfer.

### B.   Convenience of the Parties

Google argues that the Northern District of California is "clearly a more convenient venue for this litigation."  (See ECF No. 22-1 at 1.)  While Google organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

### 1.   Location of Sources of Proof

Google argues that "the vast majority of potentially relevant documents related to the research, design, development and sales of any of the potentially implicated instrumentalities and products is located in the Northern District of California."

17

(ECF No. 22-1 at 8.)  Google contends that the volume of these "potentially relevant documents . . . far exceeds the volume of documents in Tennessee."  (ECF No. 37 at 4.)

B.E. argues that, because its CEO resides in the Western District of Tennessee, its corporate documents and records, "including documents demonstrating the conception and reduction to practice of [the patents-in-suit]," are located in the Western District.  (ECF No. 29 at 5, 7.)  B.E. notes that while Google's sources of proof are located in the Northern District of California, B.E.'s own sources of proof are located in Tennessee and have been maintained there for years.  (Id. at 12.)  B.E. also contends that "the location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged electronically – and because Google certainly has familiarity with electronic document transfer – the weight given this factor should be minimal.  B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that Google will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee." (Id. at 13.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor.  This

18

notion has been expressly rejected by the Federal Circuit.  See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, Inc., 566 F.3d 1338, 1345-46 (Fed. Cir. 2009) (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents Google has in its possession outnumbers the patent-related documents in B.E.'s possession, but the Court disagrees that this is enough to tip the balance in favor of transfer. The Court finds that both parties maintain documents in their respective districts; that both sets of documents will be integral to the proceedings; and that Google will be expected to serve its documents on B.E.'s counsel in Northern California, not in the Western District of Tennessee (see ECF No. 29 at 13). Google's reliance on In re Nintendo and L&P Property Management

Co. v. JTMD, LLC, No. 06-13311, 2007 WL 295027 (E.D. Mich. Jan.
29, 2007), is misplaced.  (See ECF No. 22-1 at 8.)  In both of
those cases the courts found there were no relevant documents in
the transferor district, therefore transfer was appropriate.
See In Re Nintendo, 589 F.3d at 1199-1200; L&P Prop. Mgmt. Co.,
2007 295027, at *4.  In the instant case, B.E. has shown that
relevant documents are located in Tennessee.  Taken together,
the aforementioned facts indicate that as to the location of the
sources of proof, the Northern District of California is a
somewhat more convenient venue for the parties to the instant
case.  This factor, however, is not sufficient, by itself, to
require transfer.

> ### 2. Financial Hardships Attendant to Litigating in the Chosen Forum

Google argues that a "vast majority of the relevant
engineers and employees work and/or reside in the Northern
District of California, and none are located in Tennessee."
(ECF No. 22-1 at 9.)  As a result, Google contends that travel
to Tennessee would "impose a significant inconvenience for
Google's witnesses," and as the likely trial witnesses are a
"core group of employees," their absence "would adversely affect
Google's operations."  (ECF No. 22-1 at 9.)

B.E. states that it "would face a financial burden by
having to litigate in the Northern District of California."

20

(ECF No. 29 at 14.)  B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis."  (Hoyle Aff., ECF No. 29-1, ¶ 9.)  B.E. also states that "[i]t is reasonable to require companies with the wealth and size of Google to litigate in jurisdictions in which they regularly conduct business."  (ECF No. 29 at 7.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case.  Ellipsis, Inc. v. Colorworks, Inc., 329 F. Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case, B.E.'s CEO stated that the company will incur additional expenses, but it has not shown with any specificity how detrimental those expenses would be to the company.  Further, while Hoyle stated that his personal financial status would be adversely affected by litigating in the Northern District of California, he did not state why or how his personal finances would impact B.E., the party to the instant case.  (ECF No. 29-1 ¶ 9.)  B.E. has shown that Google has the ability to bear expenses in this forum (see ECF No. 29-3; ECF No. 29-4), but the Court does not find this to be a dispositive factor in denying Google's Motion.  But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the

party opposed to transfer showed it "ha[d] no net worth, very
little revenue, no gross profits, no assets, and [would have to]
borrow from its owners in order to pay the litigation
expenses"). The Court finds that the evidence presented is
insufficient to make a showing that B.E. or Google will be
adversely affected by litigating in either forum. The paramount
consideration remains whether the Northern District of
California is <u>more convenient</u> to the parties than B.E.'s chosen
forum.

With respect to convenience, the Court finds this factor
does not weigh in favor of transfer. While Google has made a
showing that its business would be disrupted by the absence of
its proposed witnesses, B.E. has made an equal showing that its
business would be disrupted in having to prosecute the instant
case in California. Google has shown that the Northern District
of California would be a more convenient forum for it, but it
has not shown that the Northern District of California is a more
convenient forum for all parties. As a result, the hardship to
Google does not indicate transfer is more convenient.

C. **Interests of Justice**

Google argues that transfer to the Northern District of
California is appropriate based on additional considerations
that pertain to the interests-of-justice factor. (ECF No. 22-1
at 11-13; ECF No. 37 at 9-10.) These considerations include the

"public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1. In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1. Trial Efficiency

Google argues that while the Western District of Tennessee "has a shorter median time from filing to trial, and fewer intellectual property cases, . . . the average docket of pending cases per judge [is] actually higher" in the Western District of Tennessee than in the Northern District of California.  (ECF No. 37 at 9.)  Google admits, however, that in general this factor is neutral because the Western District of Tennessee has established local patent rules and the statistics of each district are negligible to the determination of convenience. (Id.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year."  (ECF No. 29 at 14.)  B.E. cites the 2011 Federal Court Management Statistics for both districts to illustrate that the median time from filing to trial in the Northern District of California was 35.4 months, while the median time from filing to trial in the Western District of Tennessee was 20.8 months.  (Id. (citing ECF No. 29-5).)

The Court agrees with Google and finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

### 2.   Local Interest

Google argues that the Northern District of California has strong local ties to the instant case because Google is located there, the sources of proof are located there, and the alleged infringement took place there. (ECF No. 22-1 at 12.) Google also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation. (Id.) Google also argues that the Northern District of California has a local interest because "the conduct of companies, employees, and third parties located in the district has been called into question, and is asserted to give rise to liability." (Id.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here. (ECF No. 29 at 15.) B.E. also asserts that its ties to Tennessee are not "recent, ephemeral, or manufactured for the purposes of litigation." (Id.) Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof

24

pertinent to the instant case are located in the district.
(Hoyle Aff., ECF No. 29-1, ¶¶ 2-4, 7-8.)

    The Court finds that this factor does not weigh in favor of
transfer.  While Google has strong local ties to the Northern
District of California, the Court finds that B.E.'s connection
to the Western District of Tennessee was not manufactured for
the purposes of litigation.  B.E.'s founder and CEO, who is also
the holder of the patent-in-suit, has resided in the district
for seven years.  B.E.'s connections, therefore, are neither
"recent" nor "ephemeral."  As a result, Google has not
demonstrated that the Northern District of California's local
interest outweighs that of the Western District of Tennessee.

**IV.  CONCLUSION**

    For the foregoing reasons, the Court finds that, in
balancing the statutory factors, Google has not demonstrated
that the Northern District of California is a more convenient
forum than the Western District of Tennessee.  Therefore,
Google's Motion to Transfer Venue is DENIED.

    Accordingly, the Court hereby LIFTS the February 11, 2013,
stay of all proceedings.  (ECF No. 42.)  Regarding the Court's
February 8, 2013, Order granting Defendant's Motion for
Extension of Time to File a Response to Plaintiff's Motion to
Strike Defenses (ECF No. 41), Defendants shall have fourteen

days from the date of entry of this Order, up to and including

June 7, 2013, to file its Response.

**IT IS SO ORDERED** this 24th day of May, 2013.

s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE